William F. Campbell and Grace L. Campbell, Appellees, v. Linda Lou Fisher, Donna Lynn Fisher, and Donald Fisher (Donald Fisher, Appellant).

Gen. No. 11,417.

Second District, First Division.

January 26, 1961.

Russell J. Goldman, of Rockford, for appellant.

Pedderson, Menzimer & Conde, of Rockford, for appellees.

McNEAL, J.

This is an appeal by Donald Fisher, father of Linda Lou Fisher and Donna Lynn Fisher, from a decree entered by the County Court of Winnebago County, adjudging Linda Lou and Donna Lynn to be the adopted children of the petitioners, William F. Campbell and Grace L. Campbell.

In their petition for adoption petitioners alleged that the father, Donald Fisher, was unfit to have said children by reason of abandonment, or desertion of them for more than six months next preceding the filing of the petition. In his answer Mr. Fisher denied these allegations and he now contends that there was insufficient evidence to show any abandonment or desertion of the children and that the trial court's rulings on those issues were against the manifest weight of the evidence.

The evidence discloses that Donald Fisher married Grace L. Campbell's sister, Marion, in the fall of 1946. To this marriage Linda Lou Fisher was born at Weisbaden, Germany, on February 28, 1948, and Donna Lynn Fisher was born at Riverside, California, on December 31, 1951. Marion Fisher, mother of the children, died on February 25, 1957.

Donald Fisher was in the military service from November, 1941, until July 31, 1952. He was awarded five battle stars and theatre ribbons, and was given a medical discharge on account of nervous disorder. Because of 100% disability he receives a monthly pension of $252.00.

Since his discharge from the service Fisher has been in many mental hospitals. In 1953 he was in the Veterans Hospital at Tomah, Wisconsin, for three months, in the Downey Hospital, Chicago, for a month, and in a hospital at Chanute Field for ten days. In the fall of 1955 Fisher entered a mental hospital in Nashville, Tennessee, and was treated there two to four weeks. From February until the middle of July, 1956, he was

a patient at West Side Veterans Hospital in Chicago. Upon his release he worked for a while in Chicago, and then returned to Rockford and obtained employment. Following another mental upset, he was a patient at a hospital in Kentucky, and then returned to the Downey Hospital in Chicago. During some of these emotional upsets Fisher wrote checks without sufficient funds. Some checks were written and cashed in taverns. At times he suffered blackouts, and he has no recollection of what he did or what happened on such occasions.

In June, 1956, Mrs. Fisher took her children to the home of the Campbells in Toledo, Ohio, and she and the children lived with the Campbells until her death. In October, 1956, Johnsie Fisher, father of Donald, took him from the Downey Hospital to Tucson, Arizona. There the father invested $5000 in a garage and service station business in order to provide employment for his son. This arrangement kept Donald busy through the winter months. After the children's mother died in February, 1957, Mrs. Campbell returned the children to their father, and he took them with him to Tucson.

According to Donald Fisher's testimony, after he had the care of the children a while, he knew that he was slipping—becoming upset. He knew that he could not go to the hospital because his father was unable to run the service station alone—and the children would wake up at one, two or three o'clock in the morning "screaming bloody murder." In June, 1957, Fisher had a complete upset, he went to the Salvation Army and they took the children to a juvenile home, he cashed checks amounting to about $500 belonging to his father's business, and he ended up in the Veterans Hospital in Las Vegas.

The children were made wards of the Clark County Court in Las Vegas and that court put them in the

custody of William F. and Grace Campbell on July 12, 1957. The Campbells took the children with them to their home in Toledo and kept them there until April, 1958, when they and the children moved to Rockford. After residing in Rockford about a year, they filed their petition to adopt the children on April 28, 1959.

From the Veterans Hospital in Las Vegas, Fisher went to the Brentwood Hospital in Los Angeles, and remained there until January, 1958. Thereafter he was in a hospital in Lexington, Kentucky, the Ohio Psychiatric Institute in Columbus, the Hines Hospital, Chicago, in June, and the Danville Veterans Hospital in July and August, 1958. He was in a hospital for seven weeks in the spring of 1959. In his answer dated May 8, 1959, Fisher alleged that since his hospitalization in 1957 he has been restored to health and was then well able to take care of his children. Yet the evidence shows that he returned to the hospital in June, 1959, and remained there until in August, and that he was a patient in the Veterans Hospital, Murfreesboro, Tennessee, from in October until the middle of November, 1959.

In the decree of adoption entered on February 2, 1960, the trial court found that the children had been in the care, custody and control of the petitioners and resided in their home continuously since July 12, 1957; that the children are related to petitioners—Grace L. Campbell being their maternal aunt; that petitioners are reputable persons and of sufficient ability to bring up the children and furnish them suitable nurture and education; that Donald Fisher, the surviving parent, is an unfit person to have the children by reason of abandonment and desertion of the children for more than six months next preceding the commencement of the action; and that it is for the best interests of the children that the adoption be made.

457

██ Appellant does not dispute that petitioners are fit and proper persons to care for his children. He does contend that there is no evidence of his unfitness, and particularly that there is no evidence of his wilful intention to abandon or desert his children. It has been held that intent is an essential ingredient to desertion and abandonment as such terms are used in the statute for adoption, and that a parent's unfitness by abandonment or desertion of his child must be proven by very clear and convincing testimony. In re Adoption of Walpole, 5 Ill.App.2d 362, 368, 125 N.E.2d 645.

In Giacopelli v. Florence Crittenton Home, 16 Ill.2d 556, 158 N.E.2d 613, the petitioners sought by writ of habeas corpus to secure custody of their four-month-old son from his adoptive parents. In their return to the writ it was alleged that the natural parents had abandoned the child and were not fit to have his care and custody. The adoptive parents had obtained custody of the boy shortly after his birth. Thus the father of the boy had never had him in his care and custody, and consequently there was no evidence of any intention by Giacopelli to abandon or desert his son. However, there was evidence of his lack of interest in the prospective birth of his son and evidence of Giacopelli's past conduct and character which failed to inspire any degree of confidence in his fitness to rear his son. At p. 566, the Court said:

> "It is not necessary that the natural parents be found unfit. . . . That is only one of the many circumstances that may be considered in the determination of the one question in such a case as this. Giving full consideration to the primary and superior right of the natural parents to the custody of their child, what does the best interest of the child demand? . . . We cannot speculate with the life of a child, and we must accept that which

is apparent. We cannot uproot the child from an adoptive home full of love, care and opportunity, for the sole and only purpose of placing him with his natural parents—one of whom has abandoned him, and where the past conduct and character of the other fails to inspire any degree of confidence. The history of the father's behavior, if continued, could not be a good influence."

Although the matter of a parent's intent in connection with his unfitness on account of abandonment or desertion of his child was not specifically mentioned in the Giacopelli decision, the Court did specifically hold that it is not necessary that a parent be found unfit—the one question in a case such as this being the best interest of the child. Since proof of parental unfitness is not necessary, proof of his intent to be unfit is unnecessary. It follows that the matter of intent is likewise subordinated to the sole question of what the child's best interest demands.

Considered in the light of the decision in the Giacopelli case, the best interest of the Fisher children clearly demands that they be the adopted children of the Campbells. Except for a few months following their mother's death in 1957, their home life has been furnished by the Campbells continuously since June, 1956. Although Fisher received at least $252.00 a month during this period, he furnished no financial assistance to the Campbells for their support of his children. The only assistance they received for such support consisted of some social security payments following Mrs. Fisher's death. While the many instances of Fisher's hospitalization were voluntary, it is clear that his condition of emotional instability in the past indicates that his ability to furnish a secure and settled home life for his children in the future is extremely uncertain. To return them to his custody and the uncertain-

ty and insecurity of a home with him in his condition of mental health would in our opinion constitute an unfortunate event in the lives of these young girls. Under these circumstances Fisher's natural rights must give way to the welfare and best interests of his children.

Finally, the trial judge had the best opportunity to observe Donald Fisher and the Campbells and their conduct and demeanor while testifying. This is a vital factor in evaluating the correctness of the Judge's determination that Fisher is an unfit person by reason of abandonment and desertion to have the custody of his children. We should not disturb his determination in this regard unless it is against the manifest weight of the evidence. In our judgment the evidence is sufficient to sustain the findings and decree of the County Court of Winnebago County, and its decree should be and is hereby affirmed.

Affirmed.

SMITH, P. J. and DOVE, J., concur.