Marshall Houston and Vera Houston, Petitioners-Appellees, v. Clyde Brackett, Cevil Dewain Brackett and Virginia Dollett Brackett, Defendants-Appellants.

Gen. No. 11,676.

Second District, First Division.
January 18, 1963.
Rehearing denied February 6, 1963.

Barrick & Jackson, of Rockford (Robert W. Gosdick and Melvin L. Schlueter, of counsel), for appellant.

Pedderson, Menzimer & Conde, of Rockford (Dale F. Conde, of counsel), for appellees.

McNEAL, P. J.

Marshall Houston and Vera Houston filed a petition for adoption of Cevil and Virginia Brackett, her children by a former marriage. Petitioners alleged that the children's father, Clyde Brackett, was an unfit person by reason of abandonment and desertion for more than three months. The father filed an answer denying that he was unfit, and a demand for a jury trial. The County Court of Winnebago County denied the demand for trial by jury and the trial proceeded before the court without a jury. The court found the father unfit as alleged and entered a decree of adoption. Brackett appealed. His theory on appeal is that the trial court erred in denying a trial by jury and in granting the adoption. He con-

tends that the finding of unfitness was against the manifest weight of the evidence.

Clyde Brackett and Vera Brackett, now Houston, were married in Arkansas in 1954. She was fifteen years of age and he was twenty-six. Two children were born to the marriage—Cevil in 1955 and Virginia in 1958. Mrs. Brackett and the children moved to Rockford in 1959, and her husband followed about two weeks later. They lived together until the last week in February, 1960, when he left. He returned in the middle of March for a few days, and left again to find work as a farm hand in Missouri. She filed a complaint for a divorce in the Circuit Court of Winnebago County in March, 1960, and on October 20, 1960, the court granted her a divorce from Brackett on account of his acts of extreme and repeated cruelty toward her in March, 1960. The court awarded her custody of the two children, and ordered Brackett to pay her $10 per week per child for the support of the children.

Although abstracted only as "Petitioner's Exhibits 1, 2 . . . ," the record shows that these exhibits were orders entered by the circuit court subsequent to the decree for divorce. One order shows that on September 1, 1961, the court found Brackett in contempt as a result of his failure to pay child support payments amounting to $900 due under the decree. He was ordered to purge himself of contempt by paying $5 a week in addition to the weekly payments of $20 required by the decree.

Brackett admits that he has paid only $45 for the support of his children since the divorce in October, 1960. In the adoption proceedings he attempted to explain his failure to support his children on the ground that the parties and their attorneys agreed in the hall outside Judge Dusher's courtroom immediately before the divorce that Brackett and his attor-

ney wouldn't contest the divorce action, that the court would decree an amount for child support, but that Mrs. Brackett wouldn't make any attempt to collect the money decreed for child support. Brackett and his attorney testified in support of this explanation, and Mrs. Brackett and her attorney testified to the contrary. It is significant that there are no indications that Judge Dusher was apprised of this agreement at the time of the divorce or that such explanation was offered as a defense when Brackett was found in contempt for his failure to comply with the decree of the circuit court.

Marshall Houston and Vera Houston, formerly Brackett, were married on October 21, 1960,—the day after her divorce from Clyde Brackett. They filed their petition to adopt the Brackett children on April 8, 1961. The case was tried about a year later, and on April 19, 1962, the court entered a decree of adoption, which according to appellant's supplementary abstract, decreed that the Brackett children should be the adopted children of Marshall and Vera Houston.

Appellant contends that the decree of adoption should be reversed because "there was no clear and convincing evidence that there was any intent or settled purpose on the part of the defendant to abandon or desert his children at any time." As indications of his intention to the contrary, reference is made to a number of self-serving statements contained in his letters addressed to his attorneys, and to four valentines mailed to his children in February, 1962. He cites In re Adoption of Walpole, 5 Ill App2d 362, 368, 125 NE2d 645, in which the court said: "Desertion, like abandonment, must have the ingredient of intention to do so. There must be an intention to desert or an intention to abandon."

Since the decision in the Walpole case, our Supreme Court held in Giacopelli v. The Florence Crittenton

466

Home, 16 Ill2d 556, 566, 158 NE2d 613, that "It is not necessary that the natural parents be found unfit." The Court said: "That is only one of the many circumstances that may be considered in the determination of the one question in such a case as this. Giving full consideration to the primary and superior right of the natural parents to the custody of their child, what does the best interest of the child demand?"

In Campbell v. Fisher, 28 Ill App2d 454, 458, 171 NE2d 810, appellant contended that there was no evidence of his unfitness, and particularly that there was no evidence of his wilful intention to abandon or desert his children. After considering the Supreme Court's decision in the Giacopelli case holding that a finding of parental unfitness is not necessary, we concluded that proof of intention to be unfit, i. e. to abandon or desert, is likewise no longer necessary, and that the matter of intent is also subordinated to the sole question of what the best interest of the child demands.

The record in this case shows that Brackett left his children with their mother in March of 1960. He saw them when the divorce was granted in October, 1960, and four times in September, 1961, when he was cited and found guilty of contempt for his failure to provide for their support. From the time Brackett left the children until the entry of the decree of adoption in April, 1962, his contribution to the care and welfare of his children consisted of four valentines and $45. During this period of time the care and support for his children was furnished by their mother until she and Marshall Houston were married, and thereafter the Houstons provided such care and support. Houston is employed and makes about $80 a week. Mrs. Houston has been employed most of the time since she moved to Rockford, and she earns about $66 a week. They live in a five-room house, with bath, glassed-in front porch, three bed-

467

rooms, livingroom, kitchen, and a nice back yard for the children to play in. Mrs. Houston described their home as "the best we have ever had." Their landlord and three other acquaintances testified that the Houston home is clean and well kept, that the children are well clothed and fed, and that in their opinion the Houstons are fit and proper persons to adopt the children. Under the circumstances shown by the evidence, the trial court was warranted in comparing the sincerity of Brackett's professions of love and care for his children with his failure to support them even when ordered to do so, and in concluding that the best interest of the Brackett children required the establishment and security of a permanent and settled home life afforded by this adoption.

■ The trial judge had the best opportunity to observe the parties and their conduct and demeanor while testifying. This is a vital factor in evaluating the correctness of his determination. We should not disturb his findings unless they are palpably against the manifest weight of the evidence. Giacopelli v. Florence Crittenton Home, 16 Ill2d 556, 566, 158 NE 2d 613; Campbell v. Fisher, 28 Ill App2d 454, 460, 171 NE2d 810. In the light of the decision in the Giacopelli case we cannot say that the findings of the trial court with respect to Brackett's unfitness are against the weight of the evidence.

■ Appellant also contends that the trial court erred in denying his demand for trial by jury. The right of trial by jury guaranteed by the constitution obtains only in such actions as were known to the common law. Weininger v. Metropolitan Fire Ins. Co., 359 Ill 584, 590, 195 NE 420. The adoption of children was unknown to the common law and it is governed solely by statute. 1 ILP 500, Adoption Par 3. In adoption cases the jurisdiction of the court over the child is the same as that exercised by courts of chancery (McConnell v. McConnell, 345 Ill 70, 78, 177 NE 692),

468

and a trial by jury is not a matter of right in an equity proceeding. Weininger v. Metropolitan Fire Ins. Co., 359 Ill 584, 590, 195 NE 420.

■ ■ Appellant refers to section 20 of the Adoption Act (Ill Rev Stats 1961, c 4 § 9.1–20), which provides that the Civil Practice Act shall apply to all adoption proceedings except as otherwise specifically provided in the Adoption Act. Section 63 of the Practice Act provides that the mode of trial of cases in equity shall be the same as has been heretofore practiced in courts of chancery, but that the court may in its discretion direct that an issue be tried by a jury, whenever it is judged necessary. Since adoption is a statutory proceeding, and the court's jurisdiction is similar to that exercised by courts of chancery, we conclude that the denial of Brackett's demand for a jury trial on the issue of his unfitness was a matter within the sound discretion of the trial court; and that in the absence of any showing of abuse of such discretion or necessity for trial of such issue by a jury, the trial court committed no error in denying the demand for a trial by jury.

The decree of the County Court of Winnebago County is affirmed.

Affirmed.

DOVE and SMITH, JJ., concur.