Robert Louis Middlecoff, Plaintiff-Appellant, *v.* Louis Joseph Leofanti *et al.*, Defendants-Appellees—(Louis Joseph Leofanti, Plaintiff-Appellee, *v.* Robert Louis Middlecoff, Defendant-Appellant.)

(No. 70-195; )

Fifth District—May 18, 1971.

*Rehearing denied July 9, 1971.*

Dixon & McDonnell, of Belleville, (Joseph B. McDonnell, of counsel,) for appellant.

John R. Sprague, of Belleville, for appellees.

PER CURIAM:

These consolidated cases involve the custody of three minor children. Appellant, Robert Middlecoff, joined with his wife, Barbara Middlecoff, in a petition to adopt Barbara's three children by her prior marriage to Louis Leofanti. The Petition was filed November 25, 1969 and notice given Leofanti. On January 18, 1970, the day before the petition was to be heard as a default, Barbara Middlecoff died. Thereafter, on May 1,

1970, Leofanti entered his appearance in the adoption proceedings and also filed an action for custody of the children. The two actions were consolidated for trial before the court without a jury.

After hearing evidence, the trial judge entered a decree on September 28, 1970, denying the prayer of the petition for adoption and ordering Middlecoff to deliver custody of the children to Leofanti. After Middlecoff's Post-Trial Motion was denied, this appeal followed.

Louis Joseph Leofanti and Barbara Derbyshire were married in Massachusetts in July of 1959 and separated in March, 1967. Three children, who are the subject matter of this litigation were born of their marriage, namely Cristina Jean born January 14, 1961, Louis Joseph Leofanti, Jr., born August 9, 1963, and Regina Marie Leofanti born March 9, 1962. Barbara stayed at the house in Waltham, Massachusetts, where both of them had resided, until the house was sold in June of 1967. She then returned to Belleville, Illinois where she resided with her parents. She obtained a divorce from Louis in Middlesex County, Massachusetts in February of 1968. She was awarded custody of the minor children and Louis was ordered to pay $50.00 per week for the support of the children and $10.00 per week as alimony for Barbara. The decree became final on August 2, 1968.

She married Robert Louis Middlecoff in Belleville, Illinois on June 14, 1969. Robert and Barbara filed a petition to adopt the children of the Leofanti marriage on November 25, 1969, but Barbara died unexpectedly the day before the hearing. Upon being notified of Barbara's death by Robert, Louis and his mother came to Belleville after the children, but were not permitted to see them. This proceeding followed.

Appellant contends that the order of the trial court giving custody to the children's father was against the manifest weight of the evidence, while appellee claims the opposite. Both parties agree that the best interest of the children is the paramount consideration in situations involving custody of children.

Middlecoff testified that he has supported the Leofanti children since his marriage to their mother; that he does all of the cooking for himself and the children, does minor sewing repairs and personally shops for and buys the children's clothes; that he cares for and disciplines the children and they attend church regularly and say a prayer together at bedtime every night; that he has a babysitter to care for the children during the day when they are not in school; that he and the children frequently go on outings to a clubhouse owned by his parents, both of whom live in Belleville only a block from petitioner; and that the chilren's grades in school are above average and they enjoy school.

Barbara's parents, with whom she and the children lived for two years

following her return to Illinois and before her marriage to Middlecoff, testified that Leofanti never sent any money for the support of the children and that the occasional gifts of money, usually $10.00 or $20.00, which did come to the house were sent by Louis' mother to her grandchildren on their birthdays and at Christmas and Easter, and usually came with a card from Mrs. Leofanti. They also testified that Robert has always been good to the children, both before and after he married their mother; that he often took the children on outings with him and Barbara, volunteering to do so; that the children all loved and played with Robert as though he were their father; that he enjoyed a good reputation in the community; and that, in their opinion, he was a fit and proper person to be the adoptive father of the children of their deceased daughter.

Louis Leofanti, the mother of Louis Leofanti, testified that she resided in Belmont, Massachusetts with her husband, her 85 year old mother, Louis and another grown son. They own their own home and her husband is regularly employed. Their home is a two-family, six and six, three bedroom frame with a two-car garage. Louis is employed at the Cliquot Corporation as a manager. During his marriage to Barbara, they and the children visited regularly until their separation in March of 1967. She and her husband baby-sat for the children quite often. Barbara left for Illinois in June of 1967 and the last day that she was there, the children came and stayed all night at their home along with Louis. Prior to the time of their separation, Louis always showed great affection and kindness toward the children, saw that they were well-clothed and had toys to play with. Several months prior to the hearing they were in Illinois and picked up the children and took them to dinner. The children had a good time and they called their grandfather who was very happy to hear from them. If the court granted custody to Louis, the children would live in the Leofanti home. As far as she knew, her son has no present intention of getting married. There would be no financial problems. Before Barbara took the children out of Massachusetts, Louis gave her $90.00 per week for the support of herself and the children. She knew this because she made out the checks. She got the money from him and put it into her checking account so "he could bring it to her." Every month Louis gave her $50.00 which she sent to Barbara. The last check was in June of 1969, but he did sent $150.00 in December through her. He gave it to her to send. After Barbara went back to Illinois, she further testified, her son sent gifts of clothing and toys to the children regularly on their birthdays and on Christmas. She sent them, but her son paid for them. Her son kept track of the children through her. She and Barbara corresponded regularly and he would read the letters to see how the children were getting along.

On cross-examination she testified that she had written a letter saying, "Please let me know about the children. Are they at this point legally adopted? I am sending them a valentine card enclosed in the letter as I do not know anything definite * * *."

Louis Leofanti testified that he was 28 years of age at the time of the hearing; that while Barbara was living in the house in Massachusetts he contributed $90.00 per week to her through his mother's checking account. He sent her $50.00 every month through his mother up through June of 1969. In June of 1969 he became unemployed for about four months. He now works as a warehouse manager at Cliquot Club Beverages at $150.00 per week. He has a take home pay of $115.00. In December of 1969 he sent her a check for $150.00 through his mother. He kept in touch with the welfare of the children through the mother's letters, that is the letters the mother wrote to Barbara and Barbara wrote to his mother. They were about once a month. He also sent toys and presents to the children through his mother. He gave his mother the money for them and she mailed them. He further testified that he was financially able to take care of the children and they should be with him. He pays $25.00 a week board. Since the court proceedings he has been back to Illinois four times to get his children. The last time in March of 1970. On the second trip back he went to see Middlecoff's lawyer who called Middlecoff and then told Leofanti he could not see the children. When he lived with the children in Massachusetts, he took them to the beach, swam and played with them. He also took them to the zoo. He admitted on cross-examination that he took no steps to contest the adoption proceeding until after his wife died.

Appellant argues that the evidence in this case overwhelmingly discloses that the father had abandoned his children by a course of conduct that evinced a settled purpose to forego parental duties and relinquish all parental claims to the children. He states that the appellee never visited the children since they came to Illinois in 1967, the evidence that he contributed to their support is unbelievable and the evidence is undisputed that he would have let the adoption go through had it not been for the death of the mother.

These contentions have merit and if this were a suit where the mother of the children was one of the petitioners, this argument might well be valid because he may have felt that the best interests of the children lay in the mother's having the complete care, custody and control of them. However, when the mother died he was faced with a different situation, for now the person who is to have complete care, custody and control of his children is not the mother of his children, but a stranger to him. He may have been willing to abandon the children to their mother, but not

to a stranger. The citations submitted on this aspect of the case are of no value because they all involve cases where one of the petitioners was a parent or where one or both of the parents had left the children with a relative for an extended period of time.

Appellant also argues that the best interests of the children is always the proper standard in awarding custody and that it is not necessary that the natural parent be found unfit or be found to have legally forfeited his rights to custody if it is in the best interest of the child that he be placed in the custody of someone other than the natural parent. (*People ex rel. Edwards v. Livingston,* 42 Ill.2d 201; *Giacopelli v. The Crittenton Home,* 16 Ill.2d 556.) He states in his brief that *People ex rel. Edwards v. Livingston,* is strikingly similar in facts to the present case. We cannot agree for in that case the Supreme Court pointed out that the father made no effort to see his child for a period of nine years, although he never lived a greater distance than thirty miles from him; nor did he ever contribute to the support, education and welfare of the child. On the other hand, he had established an excellent relationship with the maternal grandfather with whom he resided. This situation is much different from the present case where the children resided with appellant for a period of only five months before the petition for adoption was filed, and where the children were removed a distance of 1400 miles from where the father lived.

The trial court could have believed that it was not in the best interest of the Leofanti children to place them in the home of a 25 year old man who must leave them in the care of a babysitter during his hours of employment, and that great difficulties might arise in the event he would decide to remarry in the future.

On the other hand, the trial court could have found that the interests of the children would best be served by returning them to their natural father where they would live with him in the home of their paternal grandparents. The record abounded with evidence of the affection and love that Grandmother Leofanti felt for the children all during this trying episode, and abounded with evidence of the fact that the Leofanti's home in Massachusetts was one where family love prevailed.

■■ All agree that the governing principle in awarding custody of minor children is the welfare of the children. The parent ordinarily will be given preference, not just because he or she is the parent, but because the welfare of the children will usually be promoted by living in a home with a parent-child relationship.

■■ In the difficult area of judicial inquiry as to what is the best interest of a child, it is agreed that the correctness of the trial court's de-

termination should not be disturbed unless it is palpably against the manifest weight of the evidence. *Carlson v. Oberling*, 73 Ill.App.2d 412; *Campbell v. Fisher*, 28 Ill.App.2d 454.

■■ The decision of the Circuit Court of St. Clair County denying this petition for adoption cannot be said to be against the manifest weight of the evidence. The judgment of the Circuit Court is therefore affirmed.

Judgment affirmed.