104   215
|a203s 306|

## United States Brewing Co. v. Richard Ruddy.

1. WITNESSES—*Party Can Not Call One of His Witnesses to Impeach Another.*—A party having called a witness and had him testify, can not thereafter introduce what is known as directly impeaching testimony; that is to say, he can not call witnesses to testify that a witness whom he has put upon the stand, and thereby vouched for his general credibility, is unworthy of belief; but he may by other witnesses or other means contradict statements by a witness whom he has put upon the stand. In other words, he is not concluded by the statements of a witness whom he has called.

Trespass on the Case, for personal injuries. Appeal from the Superior Court of Cook County; the Hon. JONAS HUTCHINSON, Judge presiding. Heard in the Branch Appellate Court at the October term, 1901. Affirmed. Opinion filed November 28, 1902.

F. J. Canty and J. A. Bloomingston, attorneys for appellant.

Brandt & Hoffmann, attorneys for appellee.

Mr. Presiding Justice Waterman delivered the opinion of the court.

This was an action brought to recover damages sustained by appellee through the alleged negligence of appellant.

Upon the trial appellee testified that about five o'clock on the 1st of November, 1899, he was riding down Elston avenue in Chicago on an express wagon, driving one horse; that he was in the west car track going south, that is, that he was on the proper side of the way, when he saw one of appellant's beer wagons coming toward him on the same track; that the beer wagon was proceeding toward him at a pretty rapid rate and when it got within fifteen feet, he called to it to get out of the way; that the two men on the brewery wagon paid no attention to him, until within about five feet and then they turned out; that he also endeavored to turn out; that the brewery wagon was going so fast that the rear wheel of it struck the forward wheel of his wagon and pulled it over toward the east; that he was thus by such pulling thrown from his seat into the street, where he lay with his arm broken between the shoulder and the elbow; that his shoulder and head were also bruised; that without stopping, the brewery wagon drove rapidly away and he saw no more of it; that he was taken to the hospital in the patrol wagon and was there about six weeks. This testimony was not directly disputed. The only evidence bearing directly upon an injury by it to the plaintiff, introduced by appellant, being that of numerous drivers, perhaps all employed by it, each of whom testified that he had not any such collision, and knew nothing of there having been such. The plaintiff, also, produced two witnesses who testified that they saw the accident; that they were passing along the street, and seeing the collision, and the brewery wagon driving rapidly away, they ran after it until they saw it turn into the brewery yard. The plaintiff and each of these

witnesses testified that the name of appellant was on the brewery wagon. It appeared by the testimony of these three, that the two scavengers and the plaintiff were not acquainted at the time of the accident; that these by-standers did not know who it was that had been injured, nor did either learn until about a year after the accident, when one of them casually met the plaintiff in a saloon and in conversation with him learned that he was the person who had been injured by the brewery wagon that the wit-ness followed and saw it turn into the brewery yard.

Appellant urges, and we think with some reason, that the testimony of these two lookers-on is to be viewed with sus-picion; that is to say, it is extraordinary that, having seen the accident and taken interest enough in it to call upon the driver to stop, and when he did not, have followed him until they saw him turn into the brewery yard, should have made no report thereon that reached the plaintiff, nor met him, nor ascertained who it was that was injured, until a year afterward. Nevertheless, there is nothing in all this contrary to the laws of nature, nor so strange that any one can say that, in a great city like Chicago, it did not happen. Very many people witness accidents without ever afterward meeting the injured party. If we eliminate the testimony of these lookers-on, there will still be left in the testimony of the plaintiff clear evidence of negligence by appellant and injury thereby occasioned to appellee. That appellee was injured at about the time he indicated is undisputed. Why, if he had no collision with any team in the service of appellant, he should have charged the injury to such team is not manifest. Policemen, by whom appellee was taken in the patrol wagon to the hospital, testified that his breath smelled of liquor. This, appellant says, was evidence of intoxication. It was evidence that he had been drinking, but not, by itself, of intoxication; that there should be some discrepancy between the testimony of the policemen and others as to the place at which appellant was found and the condition in which he was, is not unnatural. The policemen saw nothing of the accident. They found a

man injured, suffering and disabled therefrom. It does not appear that he was either so dressed or of such appearance that a surmise of injury as a result of intoxication would have been unnatural. But if intoxicated, the evidence is of ordinary care by the plaintiff, negligence by the defendant and consequent injury to appellee. This court can not know what the real facts concerning the injury of the plaintiff were, nor did the jury. It had to judge from the evidence; the tales told by the respective witnesses, their appearance and demeanor on the stand, and the general experience and knowledge of affairs of the jury, fitting them to decide whether that stated to them was probable or improbable, truthful or false.

We find in the record here presented, nothing that would justify us in setting aside the verdict of the jury as unwarranted by the evidence. We quite agree with appellant that one can not be permitted to call a witness for the sole purpose of impeaching him. The plaintiff, as a part of the testimony in chief, called to the witness stand one of the counsel for the defendant and asked him questions by which he drew out that prior to the trial he had a conversation with Mr. Peter Jansen, who had testified for the plaintiff; that in such conversation counsel represented appellant and was authorized by it to have such conversation. The witness, counsel for appellant, objected to the questions, but stated that he was perfectly willing to testify, only he wished to do so under objection. Finally, counsel for plaintiff asked him, in substance, if he did not request Jansen to go down to his office and make a statement favorable to the United States Brewing Company and say that he would give him $6 for two hours. The witness, counsel for appellant, denied having done so and thereupon insisted upon his right " to talk for a time." Thereupon, not in response to any interrogatories propounded by plaintiff, witness went on to detail the conversation he had with Jansen; what each said and did. Thereafter the court permitted counsel for plaintiff to call Jansen and ask him what the conversation between him and appellant's counsel,

United States Brewing Co. v. Ruddy.

Mr. Bloomingston, was. To this appellant objected, among other grounds, that the plaintiff could not impeach his own witness. Counsel for defendant denied that he had any purpose of impeaching the witness whom he had called. Counsel for plaintiff stated :

" I want to know what the insurance company has done about supplying evidence in this case." Whereupon counsel for the defendant said : " Yes, if we are going into that proposition, let us go into it thoroughly;" and further, " if he wants to go into the suppression of evidence, and the fixing up of the evidence, I am prepared to go into it, and I will go into it pretty strong; stronger than Mr. Brandt cares to have it."

We do not think it can be successfully urged that the court, under the circumstances and consent, erred in permitting Jansen to testify in effect that he was told if he would make a statement favorable to appellant he would be paid $6 therefor.

A party having called a witness and had him testify can not thereafter introduce what is known as directly impeaching testimony; that is to say, he can not call witnesses to testify that a witness whom he has put upon the stand, and thereby vouched for his general credibility, is unworthy of belief; but he may by other witnesses, or other means, contradict statements by a witness whom he has put upon the stand. In other words, he is not concluded by the statements of a witness whom he has called. Mitchell v. Sawyer, 115 Ill. 650; Rindskoph & Co. v. Kuder, 145 Ill. 607; Highley v. American Exchange Bank, 185 Ill. 565.

Appellee was, by the testimony he produced, put in the position that two of his-witnesses testified, as to a certain matter, directly opposite each other.

At the instance of counsel for the defendant the plaintiff exhibited his arm to the jury and allowed them to feel of it. Thereupon counsel for the defendant insisted that he had a right and should be permitted to feel of the arm. To this the plaintiff objected, which objection was sustained. If at the instance of counsel for the plaintiff, the jury had been permitted to feel of the plaintiff's arm, we think that

counsel for defendant should have been permitted to feel of the arm; that is to say, we are of the opinion that counsel for one party had a right to understand all the evidence given to the jury by the other side; but as counsel for the defendant had no right without the plaintiff's consent to examine his arm by feeling, we do not think he could acquire such right by offering the arm for the examination of the jury, although they might have accepted of such offer. Nor, as the testimony came in, do we think there was any error in forbidding the plaintiff to testify that some time prior to his collision with defendant's wagon he had been injured in a street car accident and had recovered therefrom.

We do not see in what way this was prejudicial to appellant, as, if anything, it tended to show that appellee was not, at the time of the injury under consideration, as strong, as capable of working and earning money, as he would have been, but for the prior railway accident.

We do not find any error in the cross-examination of the defendant's witnesses which we think should cause a reversal of this case, although we are of the opinion that there was more of an effort to confuse the witnesses than to elicit the truth from them.

The verdict for $5,000 does not indicate to us that the jury were actuated by passion or prejudice, although we do approve of the action of the trial court in requiring a remittitur and entering judgment for $4,000.

The judgment of the Superior Court is affirmed.