In the Matter of Adoption of Lynda Lou Walpole. Clyde Songer and Margaret Songer, Petitioners-Appellees, v. Margaret Songer et al., Defendants. Jesse Walpole, Defendant-Appellant.

Gen. No. 10,010.

Third District.
March 31, 1955.
Released for publication April 18, 1955.

A. R. Ivens, and Francis R. Wiley, both of Decatur, for appellant.

No brief filed for appellee.

MR. JUSTICE REYNOLDS delivered the opinion of the court.

This cause comes to this court on appeal from the county court of Macon county. Clyde Songer, the stepfather, and Margaret Songer, the mother of Lynda Lou Walpole, a minor child, brought their petition to adopt Lynda Lou against Jesse Walpole, the father. The minor child and the mother, Margaret Songer, were named defendants to comply with the statutes in such case, but the dispute is over the refusal of the father, Jesse Walpole, to consent to the adoption. The child, Lynda Lou, who reached the age of 14 years, after the petition to adopt was filed, upon reaching the age of 14 consented to the adoption. The mother, Margaret Songer, in her capacity as a defendant, also had consented to the adoption. In the petition for adoption, as a ground for adoption over the objection of the father, it was alleged that the father, Jesse Walpole, was unfit to have the custody of the child for the reason that he had abandoned said child and wilfully deserted and absented himself from the child for more than six months prior to the filing of the adoption petition.

To this petition the defendant filed his answer and asked for a jury trial. To this, a motion to strike the answer and the demand for jury was filed, and this motion to strike was allowed. Later the defendant filed his amended answer, but no further demand for a jury was filed. A guardian ad litem for the minor child was

appointed and he filed his answer. In the answer of the defendant, the only matter disputed was that the defendant was unfit to have the custody of the child for the reason of desertion or abandonment, the other matters being admitted or not disputed. In the decree allowing adoption, the county court held that the father was unfit to have the custody of the child for the reason that he had deserted and absented himself from said child for more than six months next preceding the filing of the petition for adoption. From that decree the defendant appeals to this court.

Very few of the facts in the cause are disputed, but in order to properly set forth the situation as to all parties it is necessary to recite some of them. Jesse Walpole and Margaret Walpole were married in 1932 and lived together until July 1950. In July 1950, Mrs. Walpole, later to be Mrs. Songer, left their home and went to live at another place in Decatur. She took the child, Lynda Lou, with her. In September 1951, the defendant, Jesse Walpole, and Margaret Walpole were divorced. The custody of the child, Lynda Lou, was given to the mother with right of visitation one Saturday per month being reserved to the father. There was no order for support or maintenance. About a month after the divorce, the mother, Margaret Walpole, married Clyde Songer, and since that time, the mother, the stepfather, Clyde Songer, and the child, Lynda Lou, have lived together at No. 1042 W. Prairie street in Decatur. The defendant, Jesse Walpole, lives at No. 1245 E. Johns street in Decatur. It is admitted that the father, Jesse Walpole, had not contributed anything for the support, maintenance and education of the minor child since the divorce. It is equally undisputed that the stepfather and his wife had contributed all the funds necessary for the minor child's support and other expenses. As is usual in cases of this kind, there seems to have been some ill feeling between the father and the stepfather. There is testimony in the record that

the stepfather told the father to stay away and threatened him. There is evidence that the father sent a birthday card with money enclosed to his child, and both were returned with the notation that "You are not my daddy so don't bother me." There is evidence that the aunt on the father's side sent a birthday card with money enclosed and the card was returned but the money was kept. While there is no evidence that the mother supervised the returning of the cards and the money in the case of the father, it is natural to assume that she knew all about it and did not oppose it. The returning of the cards is evidence that the child was being raised in an atmosphere that was at least very unfriendly to her own father. In fact there is testimony that the mother told the child, Lynda Lou, that Jesse Walpole was not her father, although it is admitted that the child was born in lawful wedlock to Jesse Walpole and Margaret Walpole. There is testimony that the father tried many times to see his daughter, but did not get to do so, and that even before the divorce was granted he was told by the stepfather-to-be, Clyde Songer, that he had better stay away from the child, and that he, the said Songer, would beat his ears down, or words to that effect, if he didn't stay away from his own daughter. The evidence that the father tried to see his daughter is corroborated in part by men who worked with him and knew him.

 The question before this court is whether or not, under such circumstances, the natural father of the child was unfit to have the custody of the child on the grounds of desertion or abandonment. There is no question raised as to the moral character or financial responsibility of the father. There is no testimony that he was not a fit person except that he did not contribute to his daughter's support and did not see her or in any way have anything to do with her for more than six months. Did that constitute abandonment or desertion? The statute for adoption provides that where

both parents are living both must consent to the adoption, or if one parent consents and the other is unfit, adoption can be had under proper conditions. And the grounds for unfitness on the part of a parent, among others are (1) the abandonment of the child, (2) or desertion of the child for more than six months next preceding the filing of the adoption petition. It must be noted that there is a distinction between abandonment and desertion. The desertion must be for a period of six months. There is no time limit as to the abandonment, and it must be presumed that the abandonment meant is a final act. However, it is entirely possible, that natural parents may, by their own disregard and abandonment and desertion of their child or children, be guilty of both abandonment and desertion. However, this abandonment or desertion must be proved by very clear and convincing testimony. The rights of natural parents to their children must not be terminated, unless a clear and convincing case is made in strict compliance with the adoption statute. Jackson v. Russell, 342 Ill. App. 637, citing Harmon v. Starbody, 219 Ill. App. 603, and Keal v. Rhydderck, 317 Ill. 231.

■ It is difficult to conceive that under circumstances such as are presented by this case, that the father could be held to have deserted his child for a period of six months or for any period. By the order of the court granting the divorce, the custody of the child was granted to the mother. There was no requirement as to support and the evidence shows that none was expected or desired on the part of the mother. The full charge, custody, education, maintenance and care of the child was placed in the hands of the mother by the divorce decree, and all that was left to the father was love and affection for his daughter, and the right to visit her once a month. We fail to see any element of desertion on the part of the father. He tried to see his daughter a number of times. He sent her a birthday

367

greeting and money and it was returned with the cruel notation that he was not her daddy and to quit bothering her. It is doubtful if this father had had the opportunity to talk and visit with his daughter whether or not she would have talked with and visited with him. Certainly the note on the birthday greeting, when it was sent back to him, was sufficient notice that there was no love and affection there for him. Even before he was divorced from his wife, the stepfather had very bluntly notified him that he was to stay away. There is nothing in the testimony to show that the mother or the stepfather desired or would have accepted any contribution from the father for the support of the girl. Desertion, like abandonment, must have the ingredient of intention to so do. There must be an intention to desert, or an intention to abandon. Here, although rebuffed and warned to stay away, this father did attempt to see his child, and did attempt to call her and talk to her. This would negative any intention to desert or abandon.

As used in the adoption statute, abandonment is used as a ground for finding that the parent is unfit to have the custody of a child, and not as a criminal offense. Yet in Illinois and in most jurisdictions, abandonment of children is a criminal offense.

If, when a father separated from his wife, he left the children in proper care, he was not guilty of "abandonment." Brown v. State, 122 Ga. 568, 50 S. E. 378, 379. A mere breaking up of a home by common consent, whereby the wife took possession of all the home property, is insufficient to show abandonment of his child by the father. State v. Neuroth (Mo.), 181 S. W. 1061, 1062. In order to constitute the crime of abandonment it is necessary that the child be not only deserted, but left in a destitute condition. Mays v. State, 123 Ga. 507, 51 S. E. 503. Mere failure of parents of a child, in the care and under the custody of another, to contribute, while it is in such custody and care, to its support

and maintenance for a year, does not constitute abandonment. In re Kelly, 25 Cal. App. 651, 145 P. 156, 158. Merely permitting child to remain for a time undisturbed in care of others is not such abandonment as would deprive parent of right to prevent adoption of such child, since in such case abandonment must be wilful. Truelove v. Parker, 191 N. C. 430, 132 S. E. 295. A separation agreement giving custody of infant child to wife is not abandonment by father as respects to guardianship. In re Clarke, 145 Misc. 660, 260 N. Y. S. 750. A father has not deserted his child or failed to support it, where he has lost its custody under a divorce decree which imposed no obligation on him to support it. Broman v. Byrne, 322 Mass. 578, 78 N.E.2d 616. Abandonment under the adoption statute has been held to mean any conduct on the part of a parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child. (People ex rel. Bowdry v. Bowdry, 324 Ill. App. 52, 57 N.E.2d 287; Hill v. Allabaugh, 333 Ill. App. 602, at page 607, 78 N.E.2d 127.)

█ █ In reviewing the decisions of our own courts and those of courts of other jurisdictions, this court is convinced that the greater weight of authority holds that only clear and convincing proof of such conduct on the part of a parent, that shows unmistakably that the parent is relinquishing his parental duties and claims, or is wilfully throwing the child upon the world, without regard or consideration to his or her own responsibilities and obligations, will justify a court in holding that parent unfit as set forth in the adoption statute. In this case, we think the opposite has been shown and that this father, whether effectually or not, did all that could be expected of a father under such circumstances. Deprived of his child's custody and society by the divorce decree, threatened and told to stay away from her, rebuffed, and his little token of affection returned, to hold that this father was guilty

of desertion and abandonment of his child, would be heaping coals of fire upon the head of the one that least deserved it. The evidence fails to justify the finding of the county court holding this father to be an unfit person, and the decree of adoption is reversed.

Reversed.