Helen D. Cole, Plaintiff-Respondent-Appellant, v. Terry D. Cole, Sr., Defendant-Petitioner-Appellee.

Gen. No. 69–45.

Third District.

November 10, 1969.

Mathis, Slavens, Parsons, and Hatcher, of Peoria (James G. Hatcher and J. Michael Mathis, of counsel), for appellant.

Bruce R. Becker, of Peoria, for appellee.

STOUDER, P. J.

In June, 1967, the Circuit Court of Peoria County entered a decree of divorce in favor of Helen Cole, Plaintiff-Appellant, and against Terry Cole, Sr., Defendant-Appellee. Plaintiff was granted the custody of the two minor children of the marriage (ages five and six at the

time of the decree) and defendant was granted visitation rights every Sunday. In this action, commenced in August, 1968, Defendant seeks a modification of the custodial provision of the decree asking that custody of the minor children be awarded to him. The trial court granted the modification sought and it is from such order that plaintiff has appealed.

Plaintiff argues that the order of the court is against the law and the facts as a matter of law and that she was denied a fair trial by the erroneous admission of prejudicial evidence.

Subsequent to their divorce and prior to the latter part of July, 1968, a reasonably satisfactory relationship existed between the plaintiff and defendant insofar as the care and custody of the minor children was concerned. In a written stipulation which was entered into between the parties prior to the hearing on the modification petition, the plaintiff admitted that for some time prior to July, 1968, she had carried on an adulterous relationship with one Harold Stafford. Stafford was at the time married and living with his family. The Staffords had been friends of the Cole's prior to the divorce. According to the stipulation, the affair was carried on in secret, the parties meeting at the plaintiff's house during the daytime while the children were at school or late at night after they had gone to bed.

In the latter part of July, 1968, plaintiff admitted confronting Mr. & Mrs. Stafford with the demand that Mr. Stafford choose between his wife and the plaintiff. The confrontation did not resolve the issue and plaintiff's subsequent efforts to terminate the affair were opposed by Stafford. At this time plaintiff told defendant that Stafford was bothering her and defendant's inquiries as a result thereof brought to light the relationship between plaintiff and Stafford. The unresolved problems between plaintiff and Stafford led to an incident on August 14,

1968, which apparently precipitated the filing of this petition for modification and about which there is some controversy.

On the evening of August 14, 1968, plaintiff called defendant asking him to take good care of the children. Plaintiff also admitted calling Mrs. Stafford telling her that Mr. Stafford would be sorry for what he had done. Mrs. Stafford and Mr. Cole, being apprehensive, went to the plaintiff's residence where they found her lying on a sofa somewhat groggy and sleepy. The children were there with their mother and were described by defendant as "distraught." Defendant testified that he called the hospital but no physician was asked to come or did, in fact, come. Plaintiff made and drank coffee and her alertness returned. Later a purported suicide note was discovered in the kitchen.

Plaintiff testified that she had taken several bufferin or excedrin pills, that she had not tried and did not intend to commit suicide, but that as a response to Mr. Stafford's threats of suicide, she had tried to scare people.

Defendant also endeavored to show that plaintiff committed adultery with one Galetti. The only evidence purporting to support such charge is the testimony of Galetti himself and that of Stafford. It is the court's rulings on the testimony of these witnesses that plaintiff contends were erroneous and prejudicial.

Galetti was subpoenaed by defendant and after an unsuccessful effort to quash said subpoena, Galetti took the stand. After a few questions identifying the witness, defendant moved that Galetti be made a court's witness pursuant to Supreme Court Rule 238 (c 110A, § 238, Ill Rev Stats 1967), and subject to cross-examination. After objection by plaintiff the court stated, "Well I cannot see it is prejudicial to anyone to make him a court witness, so I grant the motion."

Plaintiff argues the court erred first in declaring Galetti to be a court's witness and second in permitting questioning of Galetti as if upon cross-examination. Defendant claims that the trial court's action is authorized by and in accord with Supreme Court Rule 238 (c 110A, § 238, Ill Rev Stats 1967). Defendant offers little support for this claim, but instead argues that whether the trial court erred or not is immaterial since the issues were determined by the court sitting without a jury.

Chapter 110A, § 238, Ill Rev Stats 1967, provides: "If the court determines that a witness is hostile or unwilling, he may be examined by the party calling him as if under cross-examination. The party calling an occurrence witness, upon the showing that he called the witness in good faith and is surprised by his testimony, may impeach the witness by proof of prior inconsistent statements." It requires only a brief examination of Rule 238 to ascertain that the Rule has nothing to do with making a witness a court's witness. The rule specifically refers to ". . . by the party calling him . . ." and ". . . the party calling an occurrence witness . . ." and not to a witness called by the court. The Drafting Committee comment to this Rule in Smith-Hurd Annotated Statutes, 1967, states "This rule is new. It extends the provision of section 60 of the Civil Practice Act authorizing cross-examination to any witness who proves hostile or unwilling and the provision authorizing impeachment by prior inconsistent statements to any occurrence witness who surprises the party calling him by testimony on a material matter that is inconsistent with a prior statement made by him. . . ."

█ While the erroneous application of Rule 238 may not have been in and of itself prejudicial, it appears that it did constitute an initial step in the creation of a prejudicial climate. Defendant's counsel continued to

347

question Galetti, now purportedly a court's witness being cross-examined. The questioning elicited the testimony that Galetti was married, that he knew plaintiff socially, that he had been out with her but that the witness had not had intercourse with her. (The prior testimony of plaintiff called as an adverse witness under section 60 by defendant, was to the same effect, with the addition that plaintiff indicated that after she learned Galetti was married she had nothing more to do with him.) Galetti was also asked about two meetings with defendant and with respect to one meeting was asked the following question, "and did you in fact admit to Terry Cole on that occasion that you had had intercourse with Helen B. Cole prior to that time?" The plaintiff's objection to the question was overruled and the witness answered, "I did not." Any admission of Galetti's was hearsay so far as plaintiff is concerned. The question was proper for impeachment if and only if its admission was conditioned upon the presentation of other evidence making such issue relevant. Since, in fact, defendant did not testify to any such admission by Galetti we are left to what amounts to impeachment by innuendo.

After Galetti had concluded his testimony, Stafford was called to the stand by defendant. During his testimony he was questioned concerning alleged conversations which he (Stafford) had with Galetti. When plaintiff objected that such conversation was hearsay so far as the plaintiff was concerned, defendant initially claimed that such conversation was admissible for the purpose of impeaching plaintiff. Realizing that such an argument was untenable, defendant then claimed that the conversation was admissible for the purpose of impeaching Galetti and thereupon the court overruled the objection. Unfortunately, so far as the propriety of the ruling is concerned, no proper foundation was laid concerning any conversations between Galetti and Stafford, consequently there was nothing in Galetti's testimony that could

have been impeached by said questions. Again we have improper impeachment or impeachment by innuendo.

In holding as we do that the court permitted improper evidence of impeachment, the prejudice resulting therefrom might well have deprived plaintiff of a fair trial. Of more significance is the effect of the impeachment evidence, whether proper or improper. Since Galetti and plaintiff both denied any improper conduct, the only evidence to the contrary in support of the charge against plaintiff was that relating to the hearsay admissions of Galetti. Even if Galetti had made the admissions attributed to him they nevertheless were appropriate only to discredit Galetti's testimony and had no independent probative value in supporting the charge against plaintiff.

Notwithstanding the fact that competent evidence is lacking to support the defendant's charges relating to the Galetti affair, the court's findings indicate that it considered the charges as proved, a conclusion with which we cannot agree. Where the result is based to some indeterminable extent on erroneous findings or premises, then the propriety of the result cannnot be sustained. Under such circumstances we cannot determine whether the court properly applied the rules as set forth in Nye v. Nye, 411 Ill 408, 105 NE2d 300 and Hahn v. Hahn, 69 Ill App2d 302, 216 NE2d 229.

For the foregoing reasons the order modifying the decree of divorce is reversed and the cause is remanded with directions that plaintiff be granted a new trial.

Decree reversed and remanded with directions.

ALLOY and RYAN, JJ., concur.