131 Ill. App.2d 952 (1971)
267 N.E.2d 505
In re EUGENE DEERWESTER, ALLEGED TO BE A DEPENDENT MINOR  (BARBARA DEERWESTER GREEN, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILY SERVICES OF THE STATE OF ILLINOIS et al., Appellees.)
No. 11270.
Illinois Appellate Court  Fourth District.
March 11, 1971.
Rehearing denied March 30, 1971.
*953 Livingston, Barger, Brandt, Slater & Schroeder, of Bloomington, (James T. Foley, of counsel,) for appellant.
Paul R. Welch, State's Attorney, of Bloomington, (Harold M. Jennings, Stephen Carr, and John A. Beyer, Assistant State's Attorneys, of counsel,) for appellees.
Order reversed.
Mr. JUSTICE RICHARDS delivered the opinion of the court:
This is an appeal from an order dated October 27, 1969, terminating the parental rights of the appellant as to her son, Eugene Deerwester, and empowering Eugene's guardian to consent to his legal adoption without further notice to appellant. The order made findings that the preponderance of the evidence established that the appellant failed to maintain a reasonable degree of interest, concern and responsibility for, and also that appellant had deserted Eugene for more than three months preceding the filing of the petition. The appellant presents for review the issues of whether, as a matter of law or as a matter of fact, these findings were proper.
The court originally obtained jurisdiction of Eugene on July 31, 1964, under a dependency decree which found that it was for the best interests of Eugene, his brother Alvin and his sister Alice (twins) that their custody be transferred from their father and mother who were divorced. Both parents consented to that decree and, accordingly, custody was transferred to the County Superintendent of Public Aid in McLean County and at a later date to the Division of Child Welfare, Department of Children and Family Services. All three of these children are physically handicapped. The twins were placed in the Illinois School for the Blind at Jacksonville and Eugene, who also had poor eyesight and in addition had a speech problem, a clubfoot, and was mentally handicapped, was placed in the Baby Fold in Normal on September 29, 1965. The Baby Fold made the necessary arrangements for the medical examinations and treatment of Eugene and in June of 1967, placed him in a foster home in Shelbyville which is some eighty miles from Bloomington where the appellant resides.
Although the appellant kept contact with the children and had the twins for visits in her home, she visited with Eugene only once after he was placed in the foster home  that visit being in November of 1967. Further visits with Eugene were discussed with Eugene's various case workers but none were actually had due to difficulties in arranging for them. These difficulties came about because the Department of Children and Family Services had the legal custody of Eugene and the appellant first had to contact Eugene's case worker at that office, who would in turn contact Eugene's case worker at the Baby Fold for such arrangements. *954 During most of the time involved the appellant worked during the week and as her contact with the case workers was limited to this same time, she had to use a telephone for such contact. Appellant had no phone and when messages were left for the case workers the latter had difficulty in contacting appellant. The time for visiting Eugene was limited to weekdays and as the appellant did not have transportation she had to depend upon her present husband or her brother for such. Both of them, however, worked during the week. However, in 1968, another visit with Eugene was arranged but the appellant testified that she couldn't make it because she was sick. It was established by the case workers that during the last year preceding the decree appellant frequently called about and had had about five personal visits with the case workers about Eugene and that appellant had sent birthday, valentine, Christmas cards and a letter to Eugene, and had, on the day the petition under consideration was filed, called about visiting Eugene. These appointments to see the case workers were pre-arranged and kept without any problems. Regarding the difficulty in making arrangements for visiting Eugene, appellant testified that in July of 1969, her brother was off work and offered to take her to Shelbyville, so she called the Baby Fold about arranging for the visit. She was told by the Baby Fold case worker that she had to call the case worker at the Department of Children and Family Services for an appointment. When appellant did so she was told that she would have to wait two weeks and to call back. When the appellant did call back she couldn't get the case worker. She called again the next week and still couldn't get the case worker and she gave up trying. Appellant further testified that the only reason she didn't visit Eugene was the lack of transporation to Shelbyville.
 1-4 In order for the court to empower a guardian to consent to an adoption without the consent of the natural parent, the natural parent must be found to be an unfit person, as such is defined in the Adoption Act (Ill. Rev. Stat. 1969, ch. 4, par. 9.1-1 D(b) and (c)). The definition, among other things, deems either the failure by a natural parent to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare or desertion of the child for three months next preceding the commencement of the adoption proceedings to be grounds for a finding of unfitness. We hold that the evidence in this record does not disclose that the appellant is an unfit person within the meaning of the act. The finding of desertion by the appellant cannot be sustained as appellant willingly gave up the care and custody of Eugene for the apparent reason that he needed medical treatment and care that she was unable to provide. Not then having had the responsibility of his care, it could hardly be said that she deserted Eugene. (Carlson v. Oberling *955 (4th Dist. 1966), 73 Ill. App.2d 412, 416, 218 N.E.2d 820; In re Walpole's Adoption (3rd Dist. 1955), 5 Ill. App.2d 362, 125 N.E.2d 645.) Appellant's periodic inquiries to and appointments with Eugene's case workers and her plans to visit Eugene negated any alleged intention on her part to desert her son. Evidence of desertion must be proved by very clear and convincing evidence. (Campbell v. Fisher (2nd Dist. 1961), 28 Ill. App.2d 454, 458, 171 N.E.2d 810.) Desertion must necessarily have a far broader meaning than physical separation. Robinson v. Neubauer (4th Dist. 1967), 79 Ill. App.2d 362, 365, 223 N.E.2d 705.
 5, 6 We then come to the question of whether the above evidence supports the finding that the appellant failed to maintain a reasonable degree of interest as to Eugene's welfare. We hold that the evidence, to the contrary, shows that appellant maintained her interest and concern regarding Eugene's welfare since the original dependency decree in 1964. Under the standards in the cases of In re Walpole's Adoption (3rd Dist. 1955), 5 Ill. App.2d 362, 125 N.E.2d 645, and Carlson v. Oberling (4th Dist. 1966), 73 Ill. App.2d 412, 218 N.E.2d 820, clear and convincing proof is required to establish grounds of unfitness.
For the reason that the evidence fails to justify finding the appellant to be an unfit person, the order of the Circuit Court of McLean County is reversed.
Order reversed.
SMITH, P.J., and CRAVEN, J., concur.