THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* A. J. GANT, Defendant-Appellant.

(No. 11586;

Fourth District—February 14, 1973.

John F. McNichols, of Defender Project, of Springfield, (Bruce L. Herr, of counsel,) for appellant.

Lawrence E. Johnson, State's Attorney, of Urbana, (William R. Gaston, Assistant State's Attorney, and L. Keith Hays, Jr., Senior Law Student, of counsel,) for the People.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

The grand jury returned an indictment, containing six counts, against the defendant-appellant A. J. Gant. Count I charged the attempted murder of one Mary Ward. Count II charged aggravated battery involving the use of a gun. Count III charged aggravated battery involving great bodily harm. Count IV charged burglary. Count V charged armed violence, battery while armed with a gun. Count VI charged armed violence, burglary while armed with a gun.

Defendant was tried before a jury. Prior to trial Count IV was dismissed by the People. At the close of all the evidence the trial judge allowed defendant's motion for a directed verdict as to Count I, and Count V was dismissed on motion of the People. Counts II, III and VI were submitted to the jury. It returned verdicts of not guilty on Counts II and III, but found defendant guilty of the included offense of battery and returned a verdict of guilty on Count VI, the remaining armed violence count. Defendant was sentenced to five months for battery, given credit for the time he had been incarcerated which was equal to or exceeded the sentence imposed, and was sentencd two to ten years for the armed violence conviction, the sentences were imposed to run concurrently.

■■ Defendant urges that Counts II and III of the indictment are void because they fail to allege that the acts were done "without legal justification". The Supreme Court has disposed of this contention in two cases

which were consolidated for opinion. *People v. Harvey* and *People v. Hussey,* Docket Nos. 45078, 45097.

■■ Count VI of the indictment charges that defendant "* * * did knowingly, while armed with a dangerous weapon, perform an act prohibited by Section 9—1 of the Criminal Code of Illinois, to-wit: A Burglary, while then and there armed with a dangerous or deadly weapon, to-wit: A shotgun, in violation of Section 33A—2 of Chapter 38 of the 1969 Illinois Revised Statutes * * *". Defendant contends that Count VI is void because it fails to set forth any of the elements of the underlying offense of burglary. This contention is also disposed of, adversely to defendant, in *People v. Harvey* and *People v. Hussey, supra.*

The facts surrounding the incident in question may be summarized as follows: The case involves a breaking into the home of Daniel and Beatrice Ward. On August 12, 1970, the evening in question, Mary Ward, their daughter, was visiting in the home with her mother. They were in the living room. Mary was sitting on the couch, holding her baby. Jerry Ward, Mary's 14 year old brother was present. Mary, Beatrice, Jerry, and 3 smaller children were watching television. The defendant came to the front door and asked permission to enter and talk to Mary. The front door was open but the screen door was closed and locked. Beatrice refused defendant's request and testified that defendant then pointed a shotgun at her, told her to get a gun and shoot it out with him, and threatened to kill her. Both Beatrice and Jerry Ward identified defendant as the person who came to the door. The testimony as to defendant's threats was admitted over the objection of the defendant. Beatrice then ran to the bedroom and called the police and Jerry ran out of the house through the back door. Beatrice testified that she heard the screen door being broken open, heard Mary cry out "Don't shoot my baby", then heard a shot, and returned to the living room to find Mary lying on the floor, bleeding from a head wound and unconscious. Jerry Ward also heard the shot. On cross-examination, Beatrice Ward denied having told a defense investigator that the angle of the door obstructed her view of the intruder; she admitted that she did not see him enter the house.

Prior to trial, Mary Ward appeared before the Court and told the trial judge that she would not testify in the case. She stated that she was not frightened, that she had not been threatened. The judge explained that she had a duty to testify and could be punished if she refused, and in response to a question by the judge stated that her reason for refusing to testify was "Well, I love him, and I just don't want to." The judge then entered an order directing Mary to be present in the court-house during the trial.

When called as a witness by the People, Mary Ward testified that she

did not remember where she was on the day of the incident and pleaded the Fifth Amendment. She was then granted immunity. She then testified that she had not seen her assailant, because when she heard the word "gun" she put her head down to protect the child on her lap. The record demonstrates that she was both a reluctant and recalcitrant witness. She said nothing unusual had happened to her in August and that she did not get shot. She testified that she received a cut on her head while at her mother's home in August but didn't remember when or how; that she heard a "gun noise" at the time she was hit on the head but recalled nothing else until the police arrived.

At this juncture the prosecutor made a motion to lead the witness under Supreme Court Rule 238. The defendant objected and the Court responded "Proceed". Mary was then cross-examined about statements which she allegedly made to the police at the hospital where she was taken for treatment of her wounds. She said that at that time "I was kind of out of my head * * * I might have told the police anything, because I wasn't in my right mind then." She testified that she did not tell the police that A. J. Gant had shot her because no one had shot her, and that she did not remember if she had identified Gant in her statement to the officers.

Officer Russell Brown was then called by the People and testified that Mary Ward had related to him at the hospital that it was the defendant Gant who had broken in and shot her, that he had a double-barreled 12 gauge shotgun which she had seen before, that when her mother ran from the room Gant broke the door and came into the room, she said he fired the gun, that she fell to the floor and wasn't clear on anything that happened after that. Brown and Officer Krueger testified to the broken condition of the door, to finding Mary bleeding and unconscious.

Defendant moved for a mistrial on the ground that the State had been permitted to impeach its own witness, that the State had failed to establish that Mary Ward was a hostile witness, and that her testimony did not come as a surprise to the State. This motion was denied.

Defendant then moved that the jury be instructed that the testimony of Officer Brown was received for the limited purpose of impeachment only. In response to the motion the trial judge stated "They will be instructed at the proper time. And I think you've got a duty to tender the instruction. I don't know, but they will be instructed." During the instruction conference on the following day the trial judge stated that he probably should have told the jury, at the time Brown's testimony came in, that it was received for the limited purpose of impeachment and prior to the commencing of final arguments he stated to the jury, "Ladies and gentlemen of the jury, before we start final arguments, I

want to make it clear to the jury, what I probably didn't do yesterday, the testimony of Russell Brown, the Urbana Police Officer, who testified about certain things that Mary Ward said to him about who came in the door, about a shot being fired and so forth, this was not received by the Court except for the limited purpose of impeachment, or to test the credibility of Mary Ward. Otherwise it's hearsay, and is not to be regarded by you as substantive evidence of proof of what happened there that night."

Doctor James Keasling who had attended Mary Ward at the hospital testified, (over defendant's objections that his testimony violated the physician-patient privilege and that no foundation had been laid for the impeachment since Mary had not been previously questioned about any conversation with the doctor) that Mary· had told him that while she was sitting on a couch a man came into the room, threatened her and apparently hit her on the head with a gun at the same time the gun was fired, that she thought she had been shot. Doctor Keasling also testified that Mary told him that she knew the man but did not reveal his name. The trial judge admitted this testimony for purposes of impeachment only and so instructed the jury at the time Doctor Keasling testified. Doctor Keasling testified that Mary's head wound was not caused by a gunshot, but rather by a blow inflicted with a semi-sharp, blunt, hard object, possibly metal.

■■ Defendant contends, as to the foregoing testimony that the trial court erred in permitting the State to lead and impeach its own witness, Mary Ward. The testimony of Officer Brown and of Doctor Keasling did impeach the witness Mary Ward. In *People v. McKee*, 39 Ill.2d 265, 235 N.E.2d 625, the Court held that "The purpose of impeachment is to destroy credibility, not to prove the facts stated in the impeaching statement. What the witness stated out of court and out of presence of the defendant is pure hearsay and incompetent. Legally it is not evidence of defendant's guilt and cannot be received as proof of the fact at issue * * *. Had the case been tried before a jury the admission of such testimony would necessarily constitute reversible error for the reason that such evidence is not competent even for the purpose of impeachment where the statement bears directly on defendant's guilt or innocence. The prejudicial effect upon a jury would be too much." The rule applies whether or not the witness has been denoted a "court's witness". (*People v. Hundley*, 4 Ill.2d 244, 122 N.E.2d 568.) Mary Ward's statements to the police and Doctor Keasling that defendant Gant was her assailant were clearly hearsay and inadmissible on the issue of defendant's guilt. They were inadmissible as direct evidence and the rule set forth in *McKee* and *Tunstall* prohibits the People from doing in-

directly that which they cannot accomplish directly. The admission of this testimony was reversible error.

Defendant also argues that the Court erred in convicting defendant of both battery and armed violence when the convictions arose from the same conduct and that the battery conviction must be reversed.

██ Defendant's conduct in committing the offenses of battery and armed violence were not shown to be "independently motivated or otherwise separable", and were part of the same transaction and the acts occurred almost simultaneously. Accordingly, the defendant's battery conviction must also be reversed and remanded for new trial. *People v. Whittington*, 46 Ill.2d 405, 265 N.E.2d 679; *People v. Stewart*, 45 Ill.2d 310, 259 N.E.2d 24.

The judgments below are reversed and the cause is remanded for a new trial.

CRAVEN, P. J., and TRAPP, J., concur.