FRANK C. KUBISZ *et al.*, Petitioners-Appellees, *v.* LINDA JOHNSON, Respondent-Appellant.

(No. 12566;

Fourth District—June 12, 1975.

*Rehearing denied July 11, 1975.*

SIMKINS, P. J., dissenting.

John L. Barton, of Marseilles, for appellant.

Michael B. McClellan, of Champaign, for appellees.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Linda Johnson, mother of Kenneth Johnson, Jr., appeals from the order of the circuit court terminating her parental rights as mother, decreeing adoption with change of name by the petitioners, Kubisz, and dismissing the mother's petition in habeas corpus. The decree for adoption was entered upon the verdict of a jury finding the mother unfit.

The petition for adoption alleged that Linda Johnson was an unfit person within the definition in the Adoption Act (Ill. Rev. Stat. 1973, ch. 4, par. 9.1—1) in that she had abandoned the child, had failed to maintain a reasonable degree of interest and responsibility in the child's welfare, was guilty of substantial, continuous and repeated neglect, had failed to protect from conditions within her environment injurious to the child's welfare, was guilty of open and notorious adultery and fornication, and other neglect or misconduct.

By answer to special interrogatories the jury found that the mother was *not* guilty of abandonment, not guilty of extreme and repeated cruelty, not guilty of depravity and not guilty of open fornication.

By such interrogatories the jury found Linda Johnson guilty of failure to maintain a reasonable degree of interest and responsibility as to the child's welfare, continuous or repeated substantial neglect, failed to protect from conditions within his environment which were injurious to the boy and other neglect or misconduct.

We note initially that at the time of filing the petition, Kubisz had custody of the minor under a written agreement that the child would be returned to the mother at or upon her request. The record shows that the petition was filed after a discussion in which the mother refused to sign a consent to adoption. It was not contradicted upon an occasion when the mother refused such consent that Mrs. Kubisz told her that they would prove her unfit. The testimony of Mr. Kubisz in the record admitted that more than $4000 had been spent in procuring a private investigator to find evidence which would show the mother unfit.

We find clear reversible error in the presentation of evidence by petitioners. The tactic was to call certain witnesses whose answers denied unfitness or purported misconduct upon the part of the mother, then claim surprise at the answers and request that the court order the witnesses to be considered court's witnesses. Upon obtaining such ruling, petitioners then sought to "impeach" by having the private investigator testify in conclusory, narrative terms concerning purported statements made by the several witnesses to the investigator.

■■ The claim of surprise as to the testimony of the several witnesses was patently false for the same answers, and the same impeachment procedure had been permitted by the trial court at a hearing in habeas corpus a few days prior to this jury trial. The trial court denied a motion *in limine* filed by the mother directed to such testimony and impeachment prior to the commencement of the jury trial on the issue of fitness. There was no attempt in the record to show any reasonable expectation of petitioners that the testimony of the witnesses would differ from their former testimony.

■■ The designation of the several persons as "court's witnesses" is without authority of law in civil cases. Such designation is deemed proper in criminal cases where the State's attorney cannot vouch for the veracity of eyewitnesses to a crime, but it is necessary to call such witness to prevent a miscarriage of justice. (*People v. McKee*, 39 Ill.2d 265, 235 N.E.2d 625; *People v. Williams*, 22 Ill.2d 498, 177 N.E.2d 100; *People v. Boulahanis*, 394 Ill. 255, 68 N.E.2d 467.) The fact that a witness may be hostile or unwilling does not authorize making the witness a court's witness. *Cole v. Cole*, 116 Ill.App.2d 344, 253 N.E.2d 585.

■■ It appears that petitioner's counsel persuaded the court over objection that a "court's witness" and "impeachment" were equivalent and interchangeable. A "court's witness" is subject to cross-examination by either side upon direct issues as an attempt to arrive at the truth upon the basis of sworn testimony. The purpose of "impeachment" is to destroy credibility rather than to prove the truth of the matters stated in the impeaching testimony. What a nonparty witness said outside of court

is pure hearsay and is incompetent as evidence. *People v. McKee*, 39 Ill. 2d 265, 235 N.E.2d 625.

■■ The general rule is that a party is not permitted to impeach a witness whom he has called. (Gard, Illinois Evidence Manual Rule 490 (1963); Cleary, Handbook of Illinois Evidence § 9.3 (1963); *Hall v. Baum Corporation,* 12 Ill.App.3d 755, 299 N.E.2d 156.) In civil cases a few cases have permitted a party to impeach a witness whom the party is required by law to call as a witness. (*Thompson v. Owen,* 174 Ill. 229, 51 N.E. 1046; *In re Will of Barry,* 219 Ill. 391, 76 N.E. 577.) A party is not permitted to call a witness for the sole purpose of impeaching him. *United States Brewing Co. v. Ruddy,* 104 Ill.App. 215.

Supreme Court Rule 238 provides:

> "If the court determines that a witness is hostile or unwilling, he may be examined by the party calling him as if under cross-examination. The party calling an occurrence witness, upon the showing that he called the witness in good faith and is surprised by his testimony, may impeach the witness by proof of prior inconsistent statements."

The purport of the Rule is that a hostile witness may be questioned as upon cross-examination, *i.e.*, leading questions by the party calling him. A hostile witness may be cross-examined to refresh his recollection but not for purposes of impeachment. (*People v. Lipscomb,* 19 Ill.App.3d 114, 311 N.E.2d 257.) That portion of the Rule does not authorize the court to make a hostile witness a court's witness. *Cole v. Cole,* 116 Ill. App.2d 344, 253 N.E.2d 585.

The second sentence of the Rule permits an occurrence witness whom a party has called in good faith and whose testimony brings surprise in the sense of being unexpected to be impeached by a prior inconsistent statement. The qualities of good faith and surprise are absent in this record. The denial of the motion *in limine* was reversible error.

The record discloses persistent effort by petitioners' counsel to introduce hearsay as substantive evidence. (*Hall v. Baum Corp.,* 12 Ill.App.3d 755, 299 N.E.2d 156; *People v. Gant,* 9 Ill.App.3d 774, 293 N.E.2d 20.) The supreme court has expressly rejected the suggestion that purported impeachment testimony in the nature of out-of-court statements be permitted as substantive proof. *People v. Gant,* 58 Ill.2d 178, 317 N.E.2d 564.

The nature of the testimony of the private investigator was so prejudicial that any limiting instruction by the court was futile. *Hall v. Baum Corporation; Cole v. Cole.*

An issue remains whether the evidence supports the court's termination of parental rights and its order for adoption. Examination of the record makes it reasonable to conclude that the improperly admitted evi-

dence which we have discussed was so prejudicial that it influenced the jury in finding the mother unfit as indicated in certain of the special interrogatories.

■■ There must be clear and convincing evidence that the parent is unfit within the statutory provisions of the Adoption Act. *In re Overton*, 21 Ill.App.3d 1014, 316 N.E.2d 201; *In re Cech*, 8 Ill.App.3d 642, 291 N.E.2d 21; *In re Deerwester*, 131 Ill.App.2d 952, 267 N.E.2d 505.

Without detailed discussions of the several witnesses heard, the finding of the jury that the mother failed to maintain a reasonable degree of interest or responsibility as to the child's welfare is not supported by the evidence. At the time of the hearing the mother was about 22 years old and the child was about 3 years old. She divorced the child's father in May, 1971, shortly after the child was born. Custody of the child was awarded to her. The father supplied virtually no money for the support of the child, and apparently left the jurisdiction. Within several months she obtained employment and has been substantially continually employed from October, 1971, until August, 1973, in factory work. During substantial periods she had part-time employment on some evenings and weekends. She had made application for aid for support of the child which had been denied for reasons not clear in the record. At about the time that petitioners obtained temporary custody of the child, she had procured a job as receptionist at Starved Rock State Park and was seeking appropriate living quarters. By reason of the employment during the years she was required to provide and pay baby-sitters in sums ranging from $15 to $20 per week.

The record shows that while the mother was entering into her current employment and was seeking appropriate living quarters, the petitioners saw the child when visiting friends in La Salle County. They had an adopted son of almost identical age with the child at issue. They requested to be permitted to take the child for a visit at their home in Piatt County. The mother agreed to such arrangement suggesting that she might be able to pay some of her debts when the baby-sitting expenses were not required. When she sought, however, to obtain the child, petitioners procured a temporary injunction without notice and bond to retain custody.

We do not review the evidence in detail. It is conflicting in many aspects and much of it concerns occasional events occurring during a considerable period of time. One baby-sitter called by petitioners indicated that the child did not have too many clothes. Such fact is not remarkable in the light of the economic problems existing. One baby-sitter described the child as famished, but it appears that during such time the child had been under her care as a baby-sitter regularly for some time

and by the terms of the employment the baby-sitter was to provide food during the day. Some testimony described the child as healthy and contradicted testimony that the child was filthy. When petitioners obtained custody there was testimony concerning a scalp condition known as "cradle's cap" and an impediment or slowness of speech. Such conditions continued at the time of the trial after the child had been in petitioner's home for some 3 months, although there was some improvement.

The jury having found no abandonment by the mother and the evidence being uncontradicted that while continuously employed she provided baby-sitting care and otherwise provided as within her means as best she could, it cannot be said that there is evidence which sustains a finding of continuous and repeated neglect. Similarly, the jury having found no depravity, we can find no evidence which supports the conclusion of a failure to protect from conditions injurious to the welfare of the child. It is true that the mother was not always able to provide ideal living conditions and there may be some basis for criticism of occasional acts of conduct. The courts have clearly and consistently distinguished cases wherein the welfare of the child might require examination of facts for purposes of temporary custody from those cases severing all parental rights. (*In re Petition of Jollay*, 22 Ill.App.3d 151, 319 N.E.2d 287, *In re Cech*, 8 Ill.App.3d 642, 291 N.E.2d 21; *In re Smith*, 4 Ill.App.3d 261, 280 N.E.2d 770.) The issue of the welfare of the child in terms of temporary custody is not present.

■■ The record reflects that the petitioners are able to provide a more comfortable home and at present would probably be able to provide material advantages not available to the mother. Adoption, however, cannot be granted solely upon the basis of better material interests of the child. (*In re Cech*, 8 Ill.App.3d 642, 291 N.E.2d 21.) Before the court can consider the best interests of the child for purposes of adoption there must be clear evidence that the parent is unfit in the statutory definition. *In re Jollay*, 22 Ill.App.3d 151, 319 N.E.2d 287.

Where there is a failure to produce clear and convincing evidence that a parent is unfit within the statutory definition, it is proper to reverse the order terminating parental rights. *In re Overton*, 21 Ill.App. 3d 1014, 316 N.E.2d 201; *In re Deerwester*, 131 Ill.App.2d 952, 267 N.E. 2d 505; *In re Cech*, 8 Ill.App.3d 642, 291 N.E.2d 21.

Taken with the case is a motion of petitioners to strike a footnote appearing in the reply brief of respondent. That item contained matters outside of the record. The motion is allowed.

The decree of the trial court terminating parental rights and granting adoption to petitioners and the order denying to respondent relief sought in habeas corpus are reversed. The cause is remanded to said court with

directions to enter an order in habeas corpus returning the child to the mother.

Reversed and remanded with directions.

CRAVEN, J., concurs.

Mr. PRESIDING JUSTICE SIMKINS, dissenting:

I agree that the judgment must be reversed for the reasons set forth in the majority opinion. I would, however, remand for a new trial since, in my view, aside from the evidence improperly admitted, there was sufficient evidence of physical abuse and neglect to warrant submission of the issues to the jury.