THOMAS PETER PEYLA *et al.*, Plaintiffs-Appellees, *v.* RONALD MARTIN, Defendant-Appellant.

Fifth District    No. 75-546

Opinion filed July 16, 1976.

Stephen W. Drescher, of Land of Lincoln Legal Assistance Foundation, Inc., of Alton, for appellant.

David M. Rothenberg, of David M. Rothenberg, Ltd., of Collinsville, for appellee.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal by defendant Ronald Martin from an order of October 14, 1975, finding that he, the natural father of Christina Marie Martin was an "unfit person" as that term is defined in section 1D of "An Act in relation to * * * adoption * * *" (Ill. Rev. Stat., ch. 4, par. 9.1—1D). Defendant appeals that finding and the court's summary refusal of his petition to modify divorce decree to permit him visitation of his daughter. He also appeals the court's order entered December 1, 1975,

granting the petition of the natural mother, Nancy Martin Peyla, and her second husband, Thomas Peter Peyla, to adopt the child.

The facts of this case are plaintiff Nancy Martin and defendant Ronald Martin were married on February 25, 1972, and a child was conceived. In October, 1972, defendant was incarcerated in the Illinois State Penitentiary at Menard. While so confined, defendant wrote to his wife on a daily basis. Some of the letters were friendly, others apparently were threatening in tone after the relationship deteriorated. After December 11, 1972, plaintiff stopped visiting defendant and refused to accept the letters which were returned unopened. The child, Christina Marie Martin, was born February 16, 1973, while defendant was in prison. There was testimony that plaintiff never told defendant of the child's birth, or her name. Defendant apparently learned this information from his relatives. Plaintiff obtained a divorce from defendant on February 1, 1974, while the defendant was still in prison. The question of visitation and child support were reserved although the plaintiff received custody of the child. The defendant obtained a furlough from the penitentiary during the last three days of January, 1974, just prior to the divorce. At that time he asked plaintiff's mother to allow him to see the child and she permitted a short meeting. Defendant testified that there were two visitations; there was other testimony of only one meeting at that time. There was also contradicting testimony that defendant brought the child a stuffed animal. The defendant returned to prison at the end of his furlough and he was paroled on March 12, 1974. Defendant testified that he went to his former wife's home the day after his release on parole. Mr. Peyla testified that defendant came to the Peyla home in May, not March. At the time of the meeting, defendant was denied visitation, the plaintiff said that it was because "there wasn't any court papers to say that he had the right and I wasn't about to let him* * *." She further testified, knowing that he was on parole, that she probably told Martin that if he did not remove himself from the premises that she would call the police.

In June, 1975, defendant again attempted to visit the child and was refused permission by Mr. Peyla who was home at the time. Mr. Peyla stated:

> " * * * he [defendant] came over to where we was living and I was at home and my wife was at work and he came over and said that he had spoken to a lawyer and that he was going to go through legal stages to get visitation rights, and that's all that was said."

Defendant filed his petition to modify the divorce decree on June 19, 1975. Plaintiff and her new husband filed a petition for adoption on August 19, 1975.

The basic issue presented turns on the question of whether Ronald Martin was properly found to be an "unfit person." The court must

inquire as to the burden of proof to be applied, and whether the evidence met that standard in this case.

Five grounds showing unfitness were alleged in plaintiff's amended petition for adoption; abandonment, failure to maintain a reasonable degree of interest, desertion, substantial repeated neglect, and failure to protect the child from conditions in his environment. The trial court found that abandonment and failure to maintain a substantial degree of interest, concern or responsibility for the child's welfare had been demonstrated. The trial court did not state with regard to this finding what burden of proof was applied. With regard to the question of what was the best home for the child, the court stated that it had "clear and convincing" evidence that the child was best provided for in the home of plaintiff and her new husband.

It is difficult to determine from the record provided what standard was applied to the question of unfitness by the court. The law in Illinois is well settled that in matters of adoption, there must be clear and convincing evidence that the parent is unfit within the statutory provisions of the Adoption Act. *In re Adoption of Walpole*, 5 Ill. App. 2d 362, 125 N.E.2d 645; *Carlson v. Oberling*, 73 Ill. App. 2d 412, 218 N.E.2d 820; *In re Deerwester*, 131 Ill. App. 2d 952, 267 N.E.2d 505; *In re Adoption of Cech*, 8 Ill. App. 3d 642, 291 N.E.2d 21; *In re Moriarity*, 14 Ill. App. 3d 553, 302 N.E.2d 491; *In re Overton*, 21 Ill. App. 3d 1014, 316 N.E.2d 201; *Kubisz v. Johnson*, 29 Ill. App. 3d 381, 329 N.E.2d 815.

The trial court found that defendant had abandoned the child, and had failed to maintain a reasonable degree of interest, or concern for the child at the hearing on October 14, 1975. Those findings were incorporated in the decree of adoption ordered December 1, 1975.

It is clear from the record that the court based its decision upon the defendant's failure to become actively involved with the child from the time he was paroled on March 12, 1974, until he went again to the plaintiff's home in June, 1975. This was shortly before his parole concluded favorably on August 12, 1975. The court held that "he could have done more to express interest in the child than he did, even though he had to satisfy the requirements of his parole officer."

■■ If we examine the charge of abandonment, it is clear that the defendant did not abandon the child. In *In re Petition to Adopt Cech*, the court defined abandonment at page 644:

> "Abandonment is conduct on the part of a parent which demonstrates a settled purpose to forego all parental duties and to relinquish all parental claims to the child."

The conduct must evidence an intention to abandon. In *Mateyka v. Smith*, 47 Ill. App. 2d 1, 7, 197 N.E.2d 157:

> "In considering the subject of abandonment, our courts have

held that such question is one of intention to be determined from the evidence. Abandonment imports any conduct on the part of the parent which evidences a settled purpose to forego parental duties or relinquishment of parental claims to the child. Smith v. Crivello, 338 Ill App 503, 88 NE2d 107, In re Petition of Ekendahl et ux., 321 Ill App 457, 53 NE2d 302."

■■ It is clear from the evidence presented that the defendant did not intend to relinquish the child, or to abandon it. While he was in prison he wrote to his wife on a daily basis and inquired as to her health, and the course of pregnancy. The relationship deteriorated, and after December 11, 1972, plaintiff returned defendant's letters unopened.

Defendant admitted that some of the letters were threatening in tone, due to marital difficulties between them, but that most were not threatening. When defendant obtained a furlough in January, 1974, for three days, he spent two of them setting up a visitation with the child through plaintiff's mother, and then visiting the child. Testimony differed as to whether he visited the child once or twice during those days.

Upon his release on parole on March 12, 1974, defendant testified he went to arrange visitation the next day, and was turned away. Plaintiff testified that she knew that he was on parole, and that she threatened to call the police unless he left immediately. She said at trial that she wasn't going to allow him to see the girl unless he got court papers.

Defendant's parole officer testified that parole is a very delicate situation, and that it is possible for a parolee to be returned to the penitentiary for any violation. The officer testified that he advised the defendant not to pursue the matter legally until after parole was concluded, refused to give the defendant travel permits to the county in which the child was located, and advised defendant generally to take one thing at a time, to get parole out of the way, and then ask for visitation.

The parole officer also testified that defendant and he talked on a weekly basis. The defendant was constantly referring to the number of weeks until parole would be up, and he could pursue his rights to see the child. He filed a petition to modify the divorce decree to allow visitation shortly before parole was over. It seems difficult to construe these actions and statements of defendant as evidencing an intent to abandon.

In *Mateyka v. Smith,* the court stated the general rule in regard to overturning factual findings on appeal. The court said at page 8:

"The trial judge had the best opportunity to observe the parties and their conduct and demeanor while testifying. This is a vital factor in evaluating the correctness of his determination. We should not disturb his finding unless they are palpably against the weight of the evidence. Giacopelli v. Florence Crittenton Home, 16 Ill2d 556, 158 NE2d 613."

In this case we must conclude that the evidence did not clearly and convincingly prove abandonment of the child by defendant.

The trial court's opinion seems to turn on the defendant's failure to maintain a reasonable degree of interest, or concern for the child. There was evidence that defendant did not contribute to the support of the child until approximately six weeks before the case came on for hearing. He did not give the child gifts on holidays, or her birthday, but there was evidence that he was impoverished. The only factor which the trial court mentioned specifically was the 15-month span from March 1974 into June 1975 when the defendant was on parole, and did not make further attempts to see the child or provide for it.

Defendant was on parole, and in a highly vulnerable position from a legal standpoint. Conceivably, if he was in any kind of trouble, his parole could be revoked without a conviction. His parole officer refused him permission to travel to see the child, and advised him to drop the matter until after his parole was terminated. In this respect it is meaningful to review *In re Taylor*, 30 Ill. App. 3d 906, 334 N.E.2d 194. In that case it appeared that the Department of Children and Family Services had frustrated attempts by a mother to see her three children. There the court reviewed three previous cases, *In re Overton, In re Deerwester,* and *In re Moriarity,* in each of which the official State agencies had denied access to children and then claimed the parent was unfit because of abandonment or for failure to maintain an interest in the child in question. The court concluded at page 911:

> "It appears to us that these cases stand for the proposition that, where official acts prevent a parent from maintaining contact with a child, unfitness under the adoption act cannot be proven by such lack of contact standing alone. * * * We do not believe that the Department should be permitted to prevent a parent from contacting her children and then claim that the parent is unfit solely because she did not do so."

This case is distinguished by the fact that the parent was not frustrated by acts of any official State agency, but by a set of circumstances and the admonition of his parole officer, and refusal of travel permission. We do note, however, that the father knew of the child's location and could have made contributions or gifts through the mail.

His earlier letters by the score had been returned while he was in prison. There was no reason to believe that new letters would fare better. The child was only one year old when defendant was released on parole, and could not receive mail in her own right.

Plaintiff never requested money for the child, and defendant was never ordered to pay support by the court. In any event, defendant was impoverished during the period in question. When he did make voluntary

payments of $5 per week for the six weeks prior to trial, plaintiff refused to cash the checks. The lack of finances may also explain defendant's failure to provide gifts to the child on holidays and birthdays.

■■    In view of all these factors, it is clear that the trial court's findings that defendant failed to maintain a reasonable degree of interest, concern or responsibility for the child, was against the manifest weight of the evidence.

In *In re Taylor*, the court said:

> "We agree with respondent that under the circumstances of this situation [denial of access to child by State], it is her efforts to carry out her parental responsibilities, rather than their success, which should be considered in determining the correctness of a finding of unfitness under subsection D(b), particularly where, as here, it is alleged that the respondent's attempts to fulfill her duties were prevented by the policies or personnel, or both, of the Department." 30 Ill. App. 3d 906, 909.

We must conclude that the trial court's finding that defendant Ronald Martin was "unfit" is against the manifest weight of the evidence. Although there was some evidence of lack of concern for the child, it is clear that this did not constitute clear and convincing evidence of "unfitness." We assume the trial court applied that standard although the record does not reflect what standard was applied to that point.

> "Where there is a failure to produce clear and convincing evidence that a parent is unfit within the statutory definition, it is proper to reverse the order terminating parental rights. *In re Overton*, 21 Ill. App. 3d 1014, 316 N.E.2d 201; *In re Deerwester*, 131 Ill. App. 2d 952, 267 N.E.2d 505; *In re Cech*, 8 Ill. App. 3d 642, 291 N.E.2d 21." *Kubisz v. Johnson*, 29 Ill. App. 3d 381, 386, 329 N.E.2d 815, 819.

Accordingly, we reverse the trial court's finding of defendant's "unfitness" and its decree of adoption dated December 1, 1975. The trial court's summary denial of defendant's petition to modify divorce decree is also reversed, and remanded for further proceedings.

Reversed and remanded.

KARNS, P. J., and G. J. MORAN, J., concur.